No. 01-841

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 339

1st BANK, a Montana Banking Corporation,

        Plaintiff and Appellant,

    v.

ROBERT J. WINDERL,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
                In and for the County of Valley,
                The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Phillip N. Carter, Attorney at Law, Sidney, Montana

        For Respondent:

        Matthew W. Knierim, Christoffersen & Knierim, P.C., Glasgow, Montana

Submitted on Briefs:  May 9, 2002

Decided:  December 20, 2002

Filed:

_____
                        Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Plaintiff, 1st Bank, brought this action in the District Court for the Seventeenth Judicial District in Valley County for claim and delivery from the defendant, Robert Winderl.  1st Bank sought return of a tractor and damages for its wrongful detention.  Winderl moved to dismiss the claims and that motion was granted. 1st Bank appeals the dismissal of its damage claim.  We affirm the order of the District Court.

¶2    The issue on appeal is whether the District Court erred when it granted Winderl's motions to dismiss.

FACTUAL AND PROCEDURAL BACKGROUND

¶3    Gerald Deines, a cattle broker in Dawson County, owned a Ford New Holland Model 9030 bi-directional tractor, financed by Ford Motor Credit which perfected a purchase-money security interest (PMSI) in the tractor.  Deines also received financing from 1st Bank for his agricultural operations and 1st Bank perfected a security interest in "all machinery and equipment . . . now owned or hereafter acquired" by Deines, and their proceeds or replacements with two financial statements filed in 1990 and 1994.  On May 17, 1999, Deines filed for Chapter 7 Bankruptcy.  On June 9, 1996, a fire destroyed the secured tractor, and the tractor's insurer, Traveler's Insurance, paid off Ford's loan and also paid Deines $54,754 for the tractor.  On June 29, 1996, Deines used the insurance proceeds to purchase a newer model 9030 tractor from Malta Auto Company for approximately $47,000.  There were no new financing statements filed to reflect any security interest in the

2

new tractor. Deines debts were discharged in Bankruptcy Court on September 24, 1996.

¶4 On November 22, 1996, 1st Bank brought an action against Deines to foreclose its interest in the tractor Deines purchased with the insurance proceeds. Winderl was not a party to the suit.

¶5 In March 1997, prior to trial of that claim, Deines asked Winderl to provide feed for his cattle. Deines told Winderl that in exchange for Winderl's services, Deines would sell his tractor to Winderl. Winderl agreed, and Deines gave possession of the tractor to Winderl and provided Winderl a bill of sale. The record does not indicate that Winderl was aware of the proceeding to recover the tractor until after he had received it from Deines.

¶6 After trial of 1st Bank's action against Deines, the court held on August 5, 1998, that 1st Bank's perfected security interest extended to the insurance proceeds and tractor subsequently purchased with those proceeds. The court found the security interest had been perfected prior to the bankruptcy proceeding and ordered a judicial sale of the replacement tractor.

¶7 On August 11, 1998, 1st Bank's attorney sought return of the tractor through Winderl's attorney. Winderl did not return the tractor and on June 1, 1999, 1st Bank brought this action for claim and delivery from Winderl. 1st Bank sought: (1) possession of the tractor; and (2) damages incurred because of Winderl's alleged wrongful detention of the tractor. The complaint describes the tractor as follows: "a Ford/New Holland Model 9030 bi-directional tractor that Gerald Deines purchased from Malta Auto Company on or about June 29, 1996." The complaint further stated that "1st Bank

3

believes and therefore alleges that the Defendant Robert J. Windrell [sic] is in possession of said tractor." The District Court ordered the sheriff to "seize and take into his possession the Ford/New Holland Model 9030 bi-directional tractor in question." Neither the complaint, the bank's affidavit, nor the court's order included a Vehicle Identification Number (VIN) for the tractor. However, before the execution of the order, the bank faxed a copy of the tractor's VIN to the sheriff to help identify the tractor.

¶8 On June 2, 1999, an undersheriff and deputy took the court order to Winderl's property to recover the tractor. On or near Winderl's property, the officers identified a model 9030 tractor, but could not locate the VIN, despite a thorough search. The officers called a local Ford dealer for help locating the VIN. When Winderl arrived at the property, Winderl told the officers that he had purchased a model 9030 tractor from Deines and that he had a bill of sale, but did not admit or deny that he owned the model 9030 tractor the officers were inspecting. Winderl called Deines to ask if he knew where the VIN was located or if it had been defaced or removed. Winderl also tried to help the officers locate the VIN, but they were unable to do so. For that reason, the officers concluded that they would not seize the tractor, and left Winderl's property. The officers later testified that had Winderl admitted that he owned the tractor that they had inspected, they still would not have recovered it without first verifying the vehicle identification number. 1st Bank did not make another

4

attempt to seize the tractor, nor did the District Court order that Winderl produce the tractor.

¶9 Winderl filed a counterclaim against 1st Bank, in which he claimed that he was the legal owner of the tractor in his possession and sought a declaratory judgment on the proceeds issue. Winderl moved for summary judgment, and on November 3, 1999, the District Court held that 1st Bank had a superior security interest in the tractor. Sometime after the District Court's order, Winderl contacted Deines and told him that the tractor was not sufficient consideration and returned the tractor to Deines shortly thereafter. Deines eventually returned the tractor for sale on or about November 12, 2000.

¶10 On April 11, 2000, Winderl moved to dismiss the action to obtain possession of the tractor. On August 16, 2000, Winderl moved to dismiss 1st Bank's claim for damages for the detention of the tractor. The District Court granted Winderl's motions to dismiss on September 18, 2001.

## STANDARD OF REVIEW

¶11 Although labeled "motions to dismiss," Winderl's motions to dismiss were essentially motions for summary judgment. We review a District Court's order granting summary judgment *de novo*. *Stockman Bank of Montana v. Potts*, 2002 MT 178, ¶ 3, 311 Mont. 12, ¶ 3, 52 P.3d 920, ¶ 3. The moving party must demonstrate the absence of genuine issues of any material facts and that he is entitled to a judgment as a matter of law. *Stockman Bank*, ¶ 3.

## DISCUSSION

5

¶12 Did the District Court err when it granted Winderl's motions to dismiss?

¶13 In its order, the District Court found that there were no prior court orders directing Winderl to return the tractor or to refrain from transferring ownership or possession of the tractor. The District Court further found that the sheriff's office could not adequately identify the tractor 1st Bank asked them to retrieve and that 1st Bank obtained the relief it requested in the complaint. The District Court did not expressly address its reason for dismissing 1st Bank's action for damages for the detention of the tractor.

¶14 1st Bank contends that the District Court's determination was incorrect because there were issues of material fact remaining. 1st Bank states that for purposes of the relief sought pursuant to §§ 27-17-401 to -403, MCA, there were genuine issues of fact (1) whether Winderl possessed the tractor during the time of the suit; (2) whether Winderl knew or should have known of 1st Bank's prior lien against the tractor and its right to sell it; and (3) whether the value of the tractor diminished while in Winderl's possession.

¶15 Winderl, on the other hand, contends that summary judgment was appropriate since 1st Bank failed to specifically identify the tractor to be seized and because Winderl was under no affirmative duty to deliver the tractor. Winderl further contends that no court order required him to turn over the tractor, that his retention of the tractor was not "wrongful" within the meaning of the claim and delivery statutes, and that the District Court's

6

order in this case only determined that 1st Bank had a prior security interest.

¶16 We first note that 1st Bank has obtained possession of the tractor which is the subject of its claim for delivery and that that part of its claim is, therefore, moot.

¶17 1st Bank's damage claims are based on the following statutes: § 27-17-401(1), MCA, which provides that: "[i]n an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention;" § 27-17-402, MCA, which provides: "[i]n all cases when a judgment is rendered . . . it is the duty of the party against whom such judgment shall be rendered to return the same in as good condition as the same was when possession thereof was taken by him;" and § 27-17-403, MCA, which provides:

> In case such property, while in the possession of the party against whom such judgment shall be rendered or while unlawfully detained from the party entitled to the possession thereof, be materially injured or lessened in value by use or otherwise, then a return or offer to return shall not be deemed a compliance with the undertaking given for its return but an action may be maintained for the value thereof, as assessed by the jury or court, and damages for its detention.

The inclusion of detention damages in these sections should not, however, distract from the primary purpose of the claim and delivery statutes, which is to provide a method for obtaining possession of specific personal property. *See* § 27-17-101, MCA. Furthermore, as statutory procedures, claim and delivery statutes, like replevin statutes, must be strictly followed. *See Universal Credit Co. v. Antonsen* (Ill. 1940), 29 N.E.2d 96, 99. The only

order ever issued in this case for delivery of the tractor was issued to the sheriff pursuant to § 27-17-204, MCA, which provides: "[t]he plaintiff or his attorney may thereupon, by an endorsement in writing upon the affidavit, require the sheriff of the county where the property claimed may be to take the same from the defendant." Nor had any order been issued in any other proceeding directing Winderl to deliver possession of the tractor for which he had a bill of sale and which was not encumbered by any recorded lien.

¶18 Claim and delivery requires that the claimant prove that "the property is wrongfully detained by the defendant . . . ." *See* § 27-17-201(2), MCA. We held that "it is incumbent on plaintiff to establish by the preponderance of the evidence the right to the *immediate possession* in himself at the time the action is brought, *and that the defendant is wrongfully in possession*." *Lurie v. Sheriff of Gallatin County*, 2000 MT 103, ¶ 21, 299 Mont. 283, ¶ 21, 999 P.2d 342, ¶ 21 (quoting *O'Connell v. Haggerty* (1953), 126 Mont. 442, 446, 253 P.2d 578, 580) (second emphasis added). Previously, we held that when a defendant possessed personal property subject to a security interest, and the party's possession was rightful pursuant to contract, "they could be put in the wrong only by a breach of the contract on their part, a demand for possession by plaintiff, and a refusal of the demand by defendants." *Hennessy Co. v. Wagner* (1923), 69 Mont. 46, 220 P. 101, 102. *Hennessy* implies that a plaintiff must show that the defendant did something "wrongful" (*e.g.* breach of contract) such that the defendant would be "wrongfully in possession" of the claimed property.

8

¶19 Here, there are insufficient facts from which to conclude that Winderl "wrongfully detained" the tractor. It is clear that Winderl had never been in any contractual relationship with 1st Bank with respect to this tractor and owed no contractual duty to return the tractor to 1st Bank. In addition, no evidence suggests that Winderl had knowledge that the tractor he purchased from Deines was purchased with identifiable insurance proceeds traceable to a secured tractor. Nor was Winderl a party to 1st Bank's original lawsuit against Deines. Furthermore, the District Court did not decide that 1st Bank's security interest included the replacement tractor until August 5, 1998, more than one year after Deines sold the replacement tractor to Winderl. And there is no evidence of record that Winderl was informed of that decision.

¶20 In addition, no evidence suggests that Winderl interfered with 1st Bank's attempts to lawfully recover the tractor. 1st Bank completed the affidavit and requested that the sheriff seize and deliver the tractor, but the complaint did not provide a VIN for the vehicle, and 1st Bank's supplementary letter providing a VIN did not provide instructions for locating the VIN on the tractor. The deputy sheriffs were unable to identify the tractor to their satisfaction and chose not to pick it up. Despite 1st Bank's allegations to the contrary, the deputy sheriffs testified that Winderl cooperated with them in their attempt to identify the tractor.

¶21 Winderl lawfully obtained the tractor, violated no court order by not producing the tractor, and did not interfere with those who were directed to recover it. Furthermore, when Winderl's

declaratory judgment claim was decided in favor of 1st Bank, he returned the tractor to Deines, who delivered it to 1st Bank. There is insufficient evidence to conclude that Winderl wrongfully detained the tractor from 1st Bank. Therefore, we conclude that the District Court did not err when it held that there was no basis for recovery of damages from Winderl for wrongful detention of the tractor.

¶22 For the following reasons, we affirm the District Court's order granting summary judgment in favor of Winderl.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM REGNIER

Justice James C. Nelson dissents.

¶23   I dissent from our decision to affirm the trial court's dismissal of 1st Bank's complaint.  Rather, I agree with 1st Bank that there are material issues of fact that the court should have permitted to be resolved by way of a trial.

¶24   Clearly, § 27-17-401(1), MCA, provides authority for 1st Bank to recover not only possession of the tractor, but "damages for the detention" of the tractor as well.  *See also* §§ 27-17-402 and 403, MCA.   I disagree with the majority's statement in ¶ 17 that minimizes the importance of detention damages.  The very purpose for the statutory allowance of detention damages is to make the claimant of the property whole--i.e., to return to the rightful owner his property and to compensate him for any loss in value of the property resulting from the wrongful detention.

¶25 Judge Cybulski's September 17, 2001 order dismissing 1st Bank's cause of action was premised on there being no order in effect at the time when Winderl delivered the tractor to Deines.  That conclusion, assuming it is accurate, is not dispositive.  If 1st Bank proves--and I believe that it can--that Winderl knew of its security interest in the tractor, but wrongfully retained possession, then the absence of an order is irrelevant.

¶26   In this regard, a review of the entirety of the record in this case leads inescapably to the conclusions: (a) that Winderl knew at least as early as November 1998, that 1st Bank claimed a security interest in the Ford New Holland bi-directional tractor he had received  from Deines; (b) that Winderl knew precisely which

11

tractor the deputies were looking for--i.e., the one he received from Deines--when they attempted to recover the tractor on June 2, 1999; (c) that Winderl took the position that he was entitled to retain the tractor because his interest was superior to 1st Bank's; and (d) that on the advice of his counsel, Winderl re-delivered the tractor to Deines rather than turn it over to 1st Bank.

¶27 Winderl obviously knew of 1st Bank's foreclosure suit against Deines because on June 23, 1998, Winderl's attorney sent a letter to 1st Bank's president notifying the Bank that Deines was indebted to Winderl and that he (Winderl) intended to file crop liens in Dawson County against Deines.

¶28 Moreover, on November 13, 2000, Winderl testified, under oath, in an order to show cause hearing involving Deines before Honorable Gary Day in Cause No. DV 96-096, Seventh Judicial District, Dawson County. With respect to the Ford New Holland bi-directional tractor Winderl received from and then re-delivered to Deines, Winderl testified as follows:

> Q. Is it possible that you had a conversation with Sheriff Wessler concerning this tractor in early November of 1998?
>
> A. I'm thinking it wasn't Wessler, I thought maybe it was Buerkle, but that was possible, maybe.
>
> Q. Okay. And during that conversation, did you tell Sheriff Wessler that you were not . . . that your interests in the tractor were superior to that of the bank and that you were not willing to give it up?
>
> A. Yup, I did.
>
> Q. And did you also tell the Sheriff that you were going to go to your attorney?
>
> A. Yup.

12

* * * *

Q.    So, Mr. Winderl, then, and if I understand the Court's ruling correctly, is it true that after November 2, 1999, you delivered the tractor in question, the Ford bi-directional, to Mr. Deines?

A.    I didn't deliver it, no.  I just parked it in my yard and told him to come and get it.

* * * *

Q.    Okay.  And what else was said during that conversation, Mr. Winderl?

A.    I told him to pick it up and never ever bring it back.

¶29  Winderl's August 11, 1999, Affidavit in Support of [his] Motion for Summary Judgment on Issue of Proceeds states:

3.    Later in the summer, Deines purchased a second tractor (another bi-directional Ford New Holland) for approximately $47,000.  No filing was ever made by Plaintiff [1st Bank] on this tractor.

4.    In March of 1997, Deines approached me and asked if I would feed some livestock he had purchased in my feedlot facilities west of Glasgow.  I was aware of his bankruptcy and he told me that I could have the tractor if I would feed these livestock, which I agree to.  He gave me a bill of sale to the tractor and I was unaware that Plaintiff [1st Bank] was making any claims after Deines bankruptcy to this particular tractor until the present proceedings were instituted.

¶30  Setting aside his contradictory sworn statements regarding his knowledge of 1st Bank's claims to the tractor, Winderl's affidavit indicates no confusion over which tractor was at issue.  Winderl makes no claim that he had more than one Ford New Holland bi-directional tractor and no claim that determining the VIN number of the tractor was critical in his decision to return the tractor. Indeed, Winderl's defenses to 1st Bank's suit did not go to confusion about the identity of the tractor, but, rather to the

13

issue of whether 1st Bank had a valid security interest in the tractor. Winderl knew perfectly well the identity of the tractor in which 1st Bank claimed its security interest.

¶31 Moreover, the record reflects that when the deputies went to Winderl's farm on June 2, 1999, to recover the tractor, after greeting them with profanities, Winderl stated that he had a bill of sale of his purchase from Deines. The record is clear that Winderl knew that the deputies were there to take possession of that tractor. Notwithstanding, Winderl refused to let the deputies take the tractor. At the September 25, 2000 hearing on Winderl's motion to dismiss, Undersheriff Tymofichuk testified that when he went to Winderl's farm on June 2, 1999, to recover the tractor, Winderl had only one Ford bi-directional tractor in his yard. Winderl claimed it was possible that the tractor in his yard could belong to someone else. However, even if that were true, Winderl obviously knew which tractor he received from Deines (he certainly knew which tractor to return to Deines) and he, therefore, knew the tractor in which 1st Bank had a prior security interest.

¶32 The record belies the majority's rationale that the deputies being unable to locate the tractor's VIN number excused Winderl from turning the tractor over to them on June 2, 1999. That the deputies were reluctant to seize the tractor without being first able to locate the VIN number does not excuse Winderl from relinquishing the tractor to them when he clearly knew which tractor the deputies were looking for. And, the record is clear that he did.

14

¶33  Rather than apply the summary judgment standard at issue here--that is, whether genuine issues of material fact exist--the majority engages in selective fact-finding.  In addition, it improperly relies on *Lurie* and *Hennessy*.  It is true that *Lurie* was an appeal from a grant of summary judgment and, to that extent, it conceivably could be applicable for some purpose here.  However, the quote from *O'Connell* which the majority lifts from *Lurie* relates to a case in which a "preponderance of the evidence" standard applies; that is, a post-trial appeal, rather than a summary judgment action.  *Lurie*, ¶ 21.  In the present case, that standard is totally inapposite.  We need only determine whether genuine issues of material fact exist and, as set forth above from the record, they clearly do.  With regard to our nearly 80-year-old decision in *Hennessy*, that case--like *Lurie*--is inapposite, because the issue in that case was whether a complaint stated a cause of action for claim and delivery.  *Hennessy*, 69 Mont. at 48, 220 P. at 101.  *Hennessy* did not involve summary judgment and, indeed, relied solely on even older cases from other jurisdictions in support of the proposition for which the majority cites it here.

¶34  The issue before us in this appeal is whether Judge Cybulski erred in granting summary judgment to Winderl and in dismissing 1st Bank's claims for damages arising from Winderl's wrongful detention of the tractor.  At the very least there are genuine issues of material fact as to Winderl's knowledge of which tractor the deputies were looking for; as to whether his retention of possession of the tractor from and after November 1998, was

15

wrongful; and as to whether 1st Bank suffered compensable damages as a result of Winderl's conduct.

¶35  After reviewing the entire record *de novo*, I would hold that summary judgment was improperly granted. 1st Bank has been denied its day in court.

¶36  I dissent.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray and Justice Jim Rice concur in the foregoing dissent.

/S/ KARLA M. GRAY
/S/ JIM RICE